ARNHEIM *v.* FINSTER and others.[1]

(*Circuit Court, S. D. New York.* February 1, 1886.)

1. PATENTS FOR INVENTIONS—VOID REISSUE.

Where the application for the reissue was filed one year, nine months, and ten days from the date of the original, during which period articles which would infringe the claims of the reissue, but not of the original, were made and put upon the market by others, and where the inadvertence, accident, or mistake in the original, if any existed, was easily discernible, the reissue is void.

2. SAME—ACQUIESCENCE BY APPLICANT IN REJECTION BY PATENT-OFFICE.

Where a claim is rejected by the patent-office, and the rejection is acquiesced in by the applicant, he cannot afterwards secure such claim in a reissue, on the ground of inadvertence, accident, or mistake.

In Equity.

*Frederic H. Betts* and *C. Wyllys Betts,* for complainant.

*Gilbert M. Plympton,* for defendants.

COXE, J. The complainant is the owner of letters patent granted to Marcus Marks for an improvement in caps. The original patent, No. 166,395, is dated August 3, 1875. It was reissued July 24, 1877, in two divisions, A and B, Nos. 7,807 and 7,808. The application for the reissue was filed May 14, 1877, one year, nine months, and ten days from the date of the original. Division B of the reissue is alone to be considered. Division A is substantially a reproduction of the original patent.

The description is as follows. The words in brackets are not in the original patent; the words in italics are not in the reissue.

"Be it known that I, Marcus Marks, of the city, county, and state of New York, have invented a new and useful improvement in caps, which improvement is fully set forth in the following specification, reference being had to the accompanying drawing, in which Figure 1 represents a side view when the [swinging] ear and neck protector is pulled down. Fig. 2 is a vertical central section when the ear and neck protector is up. Similar letters indicate corresponding parts.

"This invention consists in an ear and neck protector, connected to the back part of the crown of a hat or cap by a tape, [or cloth,] and to the sides [or near the front of the hat or cap] by loops and buttons, or other equivalent fastenings, in such a manner that, whenever it may be desirable, said protector can be drawn down to cover the ears and neck of the person wearing the cap, and when no such protection is needed said protector can be raised, when it serves to impart to a cap a finished appearance.

"In the drawing, the letter, A, designates a cap, to the rear part of which is attached my ear and neck protector, B. The protector is held in place by a tape, [or cloth,] *a, in its middle,* [at the back,] and by loops, *b,* which are fastened to its ends, and catch over buttons, *c,* secured to the body or crown of the cap, [at the sides or near the front,] said fastenings being so constructed that the protector swings up and down as far as the tape, [or cloth,] *a,* will allow; the buttons, *c,* forming the centers on which the swinging motion takes place. It is obvious that, for loops and button, other devices may be

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

substituted without deviating from my invention. *My cap is ornamented in front by a band, C; and if the protector, B, is raised, it forms a similar band on the back part of the cap, and thereby a finished appearance is imparted to the article.*

"In cold or inclement weather, the person wearing my cap can draw down the protector, B, to the position shown in Fig. 1. In this position the lower edge of said protector hugs the neck of the person wearing my cap, with a close fit, and at the same time the ears of said person are covered, so that those parts are fully protected against cold air, wind, rain, or snow. My cap is exceedingly simple in its construction. It can be made and sold at a low cost, and it is of great convenience, particularly to persons compelled to spend much of their time in the open air."

The claim of the original and the claims of the reissue No. 7,808 (Division B) are placed below side by side.

| ORIGINAL. | REISSUE. |
|---|---|
| "As a new article of manufacture, the head-covering consisting of the crown or body, A, band, C, ear and neck protector, B, tape, *a*, and fastenings, *b, c;* said protector being arranged upon the exterior of the article, substantially as described, and adapted to move up and down thereon." | "(1) As a new article of manufacture, the head-covering, A, with a swinging ear and neck protector, B, attached near the front by buttons and loops, or other equivalent devices, upon which the neck protector swings as an axis, and attached at the rear by a tape or cloth, which prevents the upper edge of the protector from swinging below the lower edge of the hat or cap; the said several parts being constructed and combined substantially as described. |
| | "(2) The swinging or sliding neck protector, B, constructed substantially as described, so as to swing or slide on fastenings at the sides or near the front of the cap. |
| | "(3) The swinging or sliding neck protector, B, constructed substantially as described, so as to swing or slide on fastenings at the sides or near the front of the cap, and connected with the cap at the back by a tape or cloth, to prevent it from swinging or sliding below the lower edge of the hat or cap." |

The first claim of the reissue is alone in controversy. It will be observed that, in the original description, the ear and neck protector was held in place by a piece of tape attached to the middle of the protector. In the reissue, by substituting the words "at the back" for the words "in its middle," and adding the words "or cloth," the inventor covers every method of fastening the protector to the cap by means of cloth, even though it be an interlining extending the entire length of the protector. In the original, the band, C, was described and claimed as one of the component parts of the combination. All reference to it has been expunged from this reissue. It is, however, described and claimed with great particularity in division A; a fact

hardly consistent with the contention that the band, C, was no part of the invention, and was inserted in the claim through "inadvertence, accident, or mistake." There are other changes, but they are less significant. The proof also shows that between the dates of the original and the reissue, caps similar to the defendants' cap were put upon the market in large quantities. These caps infringe the claims of the reissue, but not of the original.

In June, 1885, a motion having been made for an injunction, Judge Wheeler, upon substantially the same record now before the court, following *Mahn* v. *Harwood*, 112 U. S. 354, S. C. 5 Sup. Ct. Rep. 174, intimated that the reissue was invalid, for the reason that the claim originally presented, for a combination without the band, C, was rejected, and, the rejection being acquiesced in, the broad claim was surrendered to the public. The mistake, if any, lay between the inventor and his solicitor in not taking an appeal, and was not the mistake contemplated by the statute. *Arnheim* v. *Finster,* 24 Fed. Rep. 276. That the court would then have decided the reissue invalid, had it been necessary for the purposes of the motion, is beyond cavil. Such a decision would, it is thought, have been in entire harmony with the adjudications of the supreme court since January, 1882.

That the reissue is broadened is too clear for controversy. It was broadened with full knowledge, on the part of the inventor, that, after his patent had been issued, caps in large numbers had been put upon the market having an improved swinging protector which did not infringe his patent. His solicitor, to whom he had given a full and ample power of attorney to represent him in all matters before the commissioner, knew that the broad claim had been rejected, and the claim including the band, C, allowed. No appeal was taken. No murmur of disapprobation for nearly two years was heard. Upon what theory, therefore, can this reissue be upheld? Every argument in its favor is met and answered by some controlling authority. At every turn the complainant is confronted by a decision of the supreme court. It is said that there was a mistake in not allowing the broad claim; but the proof shows that the matter was clearly understood, and the ruling of the examiner, including the band, C, acquiesced in by the solicitor. "Under such circumstances, the rejection of the claim can in no just sense be regarded as a matter of inadvertence or mistake. Even though it was such, the applicant should seem to be estopped from setting it up on an application for a reissue." *Leggett* v. *Avery,* 101 U. S. 256.

Again, in *Mahn* v. *Harwood, supra,* the court say:

"It was apparent, therefore, that the omission of that claim in the original was not, and could not have been, the result of inadvertence, accident, or mistake, but was the result of design on the part of the commissioner, and acquiescence on the part of the patentee; and, so far as that claim was concerned, the reissued patent was properly held to be void. The proper remedy of the patentee, when a claim applied for is rejected, is an appeal, and not an application for a reissue."

But it is urged that the inventor did not acquiesce. He knew nothing of the rejection, for the reason that he never examined the letters patent from the time he received them until the spring of 1877. This will not do. The law will not permit a party to relieve himself from the charge of negligence by asserting that he closed his eyes and ears at the time when he was required to keep his faculties awake. The inquiry is, not what the inventor knew, but what he ought to have known,—what he could have ascertained by the exercise of ordinary care and diligence. To hold otherwise would be to place a premium upon carelessness, stupidity, and fraud. There is nothing intricate or ambiguous about this patent. It does not deal with complex machinery or abstruse terms of art. The moment it was opened and read its character was disclosed. No intelligent person could have been deceived, much less the inventor himself.

To quote again from *Mahn* v. *Harwood:*

"The public has the undoubted right to use, and it is to be presumed does use, what is not specifically claimed in the patent. Every day that passes after the issue of the patent adds to the strength of this right, and increases the barrier against subsequent expansion of the claim by a reissue under a pretense of inadvertence and mistake. If any such inadvertence or mistake has really occurred, it is generally easily discernible by an inspection of the patent itself; and any unreasonable delay in applying to have it corrected by a surrender and a reissue is a just bar to such correction. If the specification is complicated, and the claim is ambiguous or involved, the patentee may be entitled to greater indulgence; and of this the court can rightfully judge in each case. * * * There was no ambiguity, and nothing to prevent the patentee from seeing, at once, on inspecting his patent, whether his whole invention was claimed or not. We can see no possible excuse, and none has been attempted to have been shown, for allowing the patent to stand the length of time it did without any attempt to have it amended."

Again, in *Wollensak* v. *Reiher*, 115 U. S. 96, S. C. 5 Sup. Ct. Rep. 1137, the court say:

"If, at the date of the issue of the original patent, the patentee had been conscious of the nature and extent of his invention, an inspection of the patent, when issued, and an examination of its terms, made with that reasonable degree of care which is habitual to and expected of men in the management of their own interests in the ordinary affairs of life, would have immediately informed him that the patent had failed fully to cover the area of his invention. And this must be deemed to be notice to him of the fact, for the law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it." See, also, the recent case of *Bachus* v. *Broomall*, 6 Sup. Ct. Rep. 229, (decided November 16, 1885.)

To paraphrase the language of *Coon* v. *Wilson*, 113 U. S. 268, S. C. 5 Sup. Ct. Rep. 537: Although this reissue was applied for a little over 21 months after the original patent was granted, the case is one where it is sought merely to enlarge the claim of the original patent by expanding that claim and adding others; where no mistake or inadvertence, such as the law recognizes, is shown, so far as the forward band and the tape are concerned; where the patentee waited until others had produced caps without the forward band, and with the con-

tinuous interlining, and then applied for such enlarged claims as to embrace the defendants' cap, which was not covered by the claim of the original patent; and where it is apparent, from a comparison of the two patents, that the reissue was made to enlarge the scope of the original.

The bill should be dismissed.