**UNION SWITCH & SIGNAL CO. v. LOUISVILLE FROG, SWITCH & SIGNAL CO.**

No. 6390.

Circuit Court of Appeals, Sixth Circuit.

Nov. 16, 1934.

Henry R. Ashton, of New York City (Charles Neave, of New York City, and A. L. Vencill, of Swissvale, Pa., on the brief), for appellant.

David P. Wolhaupter, of Washington, D. C., for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

The patent in suit is reissue No. 17,252 issued April 2, 1929, to Snavely and Wells and assigned to appellant. The original patent, No. 1,676,466, was granted July 10, 1928, for an electrical relay, designed primarily for use in operating a flashing signal light for warning at railroad grade crossings. The defenses were invalidity as a reissue, lack of invention, and noninfringement. The District Court decreed that the patent was invalid as a reissue, holding that: "The Patent Office record, as I view it, conclusively shows that there was no such inadvertence, accident or mistake as to authorize a reissue, and therefore, Reissue Patent No. 17,252 must be held void."

The file wrappers of both the original and the reissue patents are in the record. Claims 8 and 10 in the application for the original patent, which were rejected by the Examiner, were as follows:

"8. In combination, a relay comprising a pivoted armature, two electromagnets one on each side of the pivotal point of said armature and each having two poles adjacent said armature, a magnetic path of low reluctance across the two poles of each magnet, means for supplying current to the windings of said magnets, and means controlled by said armature for alternately short circuiting said windings."

"10. In combination, a relay comprising a movable armature biased to one position, an electromagnet having two magnetic poles adjacent the armature and effective when energized to move said armature toward such poles to a second position, a magnetic path of low reluctance between said poles, a source

of current constantly connected with said magnet, and means for short circuiting said magnet when the armature is moved into said second position."

In rejecting them he said: "Claims 8 and 10 are rejected on Davis in view of Coleman. To use a pivoted armature and a magnetic path of low reluctance with the coils shown in Fig. 3 of Davis would not involve invention in view of the patent to Coleman. The circuit connections shown in Fig. 3 of Davis are almost identical to those shown and claimed by applicant. If there is any novelty it must reside in the magnet or the armature structure which should be claimed per se without the inclusion of the circuit connections which are old."

The applicants then filed amendment D in which they erased all the claims in the case and substituted the two which were finally allowed. They read as follows:

"1. An electromagnet device comprising a pivoted armature, two electromagnets one on each side of the pivotal axis of said armature whereby the armature is swung in one direction or the other according as one magnet or the other is energized, and an auxiliary magnetic path of low reluctance connecting the two poles of each magnet for delaying the decay of flux in the core of the magnet when the magnet becomes deenergized and for delaying the action of the magnet on the armature when the magnet becomes energized.

"2. An electromagnetic device comprising a pivoted armature, two electromagnets one on each side of the pivotal axis of said armature whereby the armature is swung in one direction or the other according as one magnet or the other is energized, and a magnetizable shunting bar for each magnet connecting the two pole pieces of the magnet but spaced from each pole piece by a small air gap, each such bar constituting an auxiliary magnetic path for its associated magnet for delaying the decay of flux in the core of the magnet when the magnet becomes deenergized and for delaying the action of the magnet on the armature when the magnet becomes energized."

Under the heading "Remarks" accompanying amendment D, the applicants stated: "Consideration of the two new claims, presented herewith, is requested. In accordance with the Examiner's suggestion, these claims are directed to the magnet and armature structure per se, *without the inclusion of the circuit connections*, and we believe these claims are patentable over the references on the ground that they specify the auxiliary

magnetic path of low reluctance connecting the two pole pieces of each magnet." (Italics ours.)

The reissue contained the following claims:

"1. An electromagnetic device comprising a pivoted armature, two electromagnets one on each side of the pivotal axis of said armature whereby the armature is swung in one direction or the other according as one magnet or the other is energized, means effective when the armature is swung toward either magnet for placing the winding of such magnet on short circuit, and an auxiliary magnetic path of low reluctance connecting the two poles of each magnet for delaying the decay of flux in the core of the magnet when the magnet becomes deenergized and for delaying the action of the magnet on the armature when the magnet becomes energized.

"2. An electromagnetic device comprising a pivoted armature, two electromagnets one on each side of the pivotal axis of said armature whereby the armature is swung in one direction or the other according as one magnet or the other is energized, means effective when the armature is swung toward either magnet for placing the winding of such magnet on short circuit, and a magnetizable shunting bar for each magnet connecting the two pole pieces of the magnet but spaced from each pole piece by a small air gap, each such bar constituting an auxiliary magnetic path for its associated magnet for delaying the decay of flux in the core of the magnet when the magnet becomes de-energized and for delaying the action of the magnet on the armature when the magnet becomes energized."

The file wrapper thereof discloses the oath of the applicants purporting to be in compliance with Rule 87 of Patent Office Practice. It sets forth that the applicants verily believe that the said letters patent referred to in said petition and specification and therewith surrendered are insufficient and inoperative by virtue of the failure to claim their invention in the following language, sets out the reissue claims just as they were afterwards allowed, and closes with the paragraph: "And deponents further say that the error so particularly specified arose through inadvertence, accident or mistake, and without any fraudulent or deceptive intention on the part of the deponents."

Solely upon this oath the Commissioner granted the reissue. It was manifestly inadequate. As a matter of law, there was no evidence that the failure originally to claim the

invention in the language of the reissue claims had "arisen by inadvertence, accident, or mistake * * *" upon the part of the applicants, their attorney, or the Commissioner. The oath failed to comply with Rule 87 (d) of Patent Office Practice requiring that it should particularly specify "the errors which it is claimed constituted the inadvertence, accident, or mistake relied upon and how they arose or occurred." In the absence of facts from which the Commissioner could ascertain what "inadvertence, accident, or mistake" resulted in the insufficient claims, he was without authority to grant the reissue. His only power to grant a reissue is found in Revised Statutes, § 4916, as amended by Act May 24, 1928, 45 Stat. 732, 35 USC § 64 (35 USCA § 64).[1] Moneyweight Scale Co. v. Toledo Computing Scale Co., 187 F. 826, 829 (C. C. A. 7); Heidbrink v. Charles H. Hardessen Co., 25 F.(2d) 8, 9 (C. C. A. 7).

We are not concerned with whether the reissue claims were broadening or narrowing claims.

In Peoria Target Co. v. Cleveland Target Co., 58 F. 227, 239 (C. C. A. 6), the court said: "Again, if an examination of the patent-office record discloses that there was no evidence before the commissioner of accident, inadvertence, or mistake, such as to warrant him in reissuing the patent, or that there was record evidence, of a conclusive character, showing that there could have been no accident, inadvertence, or mistake, the supreme court has not hesitated to hold a reissue void. This is manifest from an examination of the decisions of that court."

See, also, Mahn v. Harwood, 112 U. S. 354, 362, 5 S. Ct. 174, 28 L. Ed. 665; Huber v. Mfg. Co., 148 U. S. 270, 13 S. Ct. 603, 37 L. Ed. 447 (which Judge Taft in the Peoria Case cited as approving Huber v. Mfg. Co. (C. C.) 38 F. 830, 836); Heidbrink v. Hardessen, supra; Hatmaker v. Dry Milk Co., 29 F.(2d) 918 (D. C.).

■■ We think the same result follows from another viewpoint.

When the reissue claims are stripped of their functional verbiage, their elements transposed and compared, element for element, with those of the abandoned claims 8 and 10 of the original patent, they are substantially the same.

It is urged that the rejection by the Examiner of claims 8 and 10 was a mistake either of law or fact, or both combined, but, if we assume, without deciding, that there was such mistake, it does not follow that the applicants are entitled to the reissue. They fully understood the holding of the Commissioner, acquiesced in it, and through their attorney abandoned the claims and intentionally substituted those of the original patent. The mistake, if any, was in the failure of the applicants to appeal. Miller v. Bridgeport Brass Co., 104 U. S. 350, 355, 26 L. Ed. 783; Dobson v. Lees, 137 U. S. 258, 265, 11 S. Ct. 71, 34 L. Ed. 652; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 43, 14 S. Ct. 28, 37 L. Ed. 989; Arnheim v. Finster, 26 F. 277, 279 (C. C.). Not only is there no basis for the argument that the substitution of the new claims was brought about by accident, inadvertence, or mistake, but, on the contrary, conclusive evidence appears on the face of the record that there was no such accident, inadvertence, or mistake. In such a situation, as well as in a case where there is an entire absence of such evidence, the court will review and correct the action of the Commissioner. Topliff v. Topliff, 145 U. S. 156, 171, 12 S. Ct. 825, 36 L. Ed. 658; American Automotoneer Co. v. Porter, 232 F. 456, 460 (C. C. A. 6); Van Kannel Revolving Door Co. v. Winton Hotel Co., 276 F. 234, 238 (C. C. A. 6); Mahn v. Harwood, supra; H. W. Roos Co. v. McMillan, 64 F.(2d) 568, 569 (C. C. A. 6).

■ We think that the reissue patent granted without authority is void, and the decree of the District Court is affirmed.

---

[1] "§ 64. *Reissue of Defective Patents; Patents for Separate Parts.* Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued to the patentee or to his assigns or legal representatives, for the unexpired part of the term of the original patent. * * *"