**CRIDLEBAUGH v. RUDOLPH.**
Civil Action No. 54.

District Court, D. New Jersey.
Aug. 8, 1941.

Boyle & Archer, by Frederick P. Greiner, all of Camden, N. J. (Richard J. Cook, of Seattle, Wash., of counsel), for plaintiff.

Carroll & Taylor, by A. Millard Taylor, all of Camden, N. J. (William S. Hodges, of Washington, D. C., of counsel), for defendant.

FORMAN, District Judge.

This suit involves Patent No. 19,562, reissued May 7, 1935, to Jacob Jones, and Letters Patent No. 2,079,107, issued May 4, 1937, to John Clayton Cridlebaugh for an alleged improvement upon the Jones invention, which are now owned by the plaintiff Cridlebaugh, and defendant's patent No. 2,181,070, issued November 21, 1939.

Each of the inventions covered by the respective patents relates to a mask or blinders adapted to be secured upon the beak of a fowl, for the purpose of preventing it picking the feathers or flesh of another. It is well known in the poultry business that birds engage in this practice and frequently the attacks are fatal. This habit is referred to as "cannibalism", "pick-outs", etc. The main object of the patented devices here involved is to impair the sight of chickens equipped therewith so that they cannot see to attack the other chickens of a brood and yet leave their sight otherwise unhindered so that they may pursue their normal habits.

Plaintiff alleges infringement of Claims 5, 7 and 8 of the Jones Reissue Patent No. 19,562, and Claim 2 of the Cridlebaugh Patent No. 2,079,107. Claims 5, 7 and 8 are as follows:

"5. A mask for fowls comprising a member to straddle the beak of a fowl with the member normally extending upwardly from the beak, said member having portions to lap the side portions of the beak at the rear part thereof, and a member extending through said lapped portions and the beak of the fowl to pivot the device to the beak."

"7. A mask for fowls comprising a member to be positioned upon the beak of a fowl with the member normally extending upwardly from the beak, and a pivot member engaged with the first named member and passing through the beak of the fowl to hold the member in place upon the beak and to allow the member to have swinging movement."

"8. A mask for fowls comprising a member to be positioned upon the beak of a fowl and normally extending upwardly therefrom, said member having portions to lap the side portions of the beak at the rear part thereof, and a pivot member extending through said lapped portions and the beak of the fowl."

Claim 2 of the Cridlebaugh patent provides as follows: "2. A guard for the purpose set forth comprising a single piece of metal shaped into two spaced apart wings adapted in applied position to be disposed one on either side of the beak of a fowl and having a size sufficient to constitute blinders, each wing having a forwardly bent outer edge and an adjustable normally rigid connecting and supporting bar connecting said wings over the beak of the fowl, and means for securing the guard to the beak with its wings substantially at right angles to the fowl's line of vision."

The bill alleges infringement of plaintiff's common law trademark "Specs" by the defendant's adoption of the use of the word "Goggles" upon its device. It also alleges that the trademark "Specs" has obtained a secondary meaning in the trade by reason of its long usage to identify plaintiff's product, popularized by extensive advertising in poultry journals of national circulation and by broadcasting locally and nationally over the radio, that the defendant by the adoption of the word "Goggles" upon its commercial products and similar advertising methods in national poultry journals and otherwise, together with simulation of plaintiff's cuts in its advertising display in national poultry journals, underselling through the trade, representations that the defendant's "Goggles" are provided with colored lens to change the color of blood, all of which has been misleading and has caused confusion, and is thus a source of unfair competition in trade.

Defendant denies the allegations of the complaint in all respects, asserts invalidity of the plaintiff's patent and contends that plaintiff comes into court with unclean hands. Affirmative relief is sought in the

form of a counterclaim for damages for alleged libel against it circulated by plaintiff in the form of letters to the trade and advertising agents, and for an injunction restraining such circulation.

The following drawings represent the devices covered by the patents of the plaintiff and defendant:

FIGURE .1.,

FIGURE .2.

FIGURE .3.

Figure 1 represents the device covered by the Jones Reissue Patent, and Figure 2 represents the device covered by the Cridlebaugh Patent. Figure 3 represents the defendant's device.

Figure 1 represents the rear view of a mask with two plates (1 and 2) riveted loosely together (3). The beak of the fowl is placed in the opening between the plates at the bottom. The pin (4) is then placed between lugs located on each side of the opening and through the breather ducts of the fowl. A rubber band (5) is also utilized to draw the plates against the beak of the fowl.

In figure 2 the arcuate member (1) rests on the beak of the fowl and the pin (2) is pushed through lugs and the breather ducts at the rear of the mask. Line 3 on each side represents a slight bending of the mask forward.

In figure 3 the pin member (1) is pushed through openings in the arcuate member and the breather ducts of the fowl. Colored lens are represented at point 2.

The inventive idea in plaintiff's patent lies in the fact that there is produced a means to prevent various forms of cannibalism among chickens consisting of blinders attached to the beak. Defendant's device serves the same function and is based upon the same principle. When it entered the field that principle was old because of plaintiff's disclosure.

The differences between defendant's device, Figure 3 supra, and plaintiff's device, Figure 1, supra, are obvious. The fact is, however, that defendant has only changed the design of the means incorporated in plaintiff's disclosure. The principle change effected by the defendant is that he has arranged his device so that the pin used in it passes through what he terms the arcuate member (beak piece), while in plaintiff's device the pin passes through lugs located rearwardly of the beak opening. In other respects it is a one piece unit while plaintiff's device under the Jones Reissue patent is a riveted unit consisting of two pieces, and the rubber band arrangement indicated in plaintiff's device is absent in defendant's device. Merely changing the form or location of the mechanical elements does not avoid infringement, if such alterations are but different ways of mechanically expressing the dominant feature of the inventive idea, and achieve the same result in substantially the same way. Weber Electric Co. v. Union Electric Co., D.C., 226 F. 482. We, therefore, conclude that the Jones Reissue patent is infringed.

Defendant does not assert that Claim 2 of the Cridlebaugh patent, Figure 2, is invalid, but contends only that it does not infringe. Defendant's device, Figure 3, so nearly resembles plaintiff's Figure 2, that the failure to contest validity is fairly obvious in view of the fact that defendant's device is also patented. In fact, defendant does not argue that its device is generally different, but only different in one material detail. This defense is based on the ground that Claim 2 contains a definite limitation, that is "each wing having a forwardly bent outer edge." This feature of the Cridlebaugh patent is demonstrated by lines 3 in Figure 2, supra. Defendant would have us believe that plaintiff's patent consists solely of this novel feature, and without it it would have been void. References to the file wrapper are made in an endeavor to show that there were presented originally twenty claims on this patent, that plaintiff finally perfected only six claims, and that no claim was allowed without the limitation. Therefore, defendant concludes that since its device has no forwardly bent edges it does not infringe.

We do not agree that defendant can avoid infringement by dispensing with "forwardly bent outer edges." In all other respects defendant's device more nearly resembles plaintiff's device than even it does the plaintiff's claims 5, 7 and 8 under the Reissue patent. For the same reasons, therefore, we conclude that there is infringement.

Defenses based on the invalidity of the Jones Reissue Patent are as follows:

1. Claims 5, 7 and 8 are broader than the original disclosure.

2. The patent contains new matter.

3. Plaintiff is estopped from asserting Claims 5, 7 and 8.

4. The oath, pursuant to U. S. Patent Office Rules of Practice, Rule 87, 35 U.S.C.A. Appendix, fails to show inadvertence, accident or mistake, as required by the statute, 35 U.S.C.A. § 64.

1. *Claims 5, 7 and 8 are broader than the original disclosure.*

The drawings accompanying the original Jones Patent and the Jones Reissue Patent are similar in every detail, and, hence, Figure 1 supra, is illustrative of the devices under both patents.

Defendant construes the original patent to embody these indispensable features: a mask consisting of two plates, and a rubber band. It argues that Claim 5 of the Reissue patent comprehends a structure which is neither provided with two plates nor a rubber band. Claim 7, it contends makes the same omission as Claim 5, but adds new matter consisting of the swinging movement of the mask. Claim 8 it construes to have the same effect as Claim 5 and void for the same reason. In short, defendant complains of the fact that these claims disregard and make unnecessary the function of the rubber band, and contemplate a one piece mask with swinging movement.

It is our opinion that the primary intended function of the rubber band under the original patent was to draw the two plates of the mask together toward each other and against the beak of the fowl, and this notwithstanding emphasis in the description of the reissue patent that its purpose as a stabilizing agent has equal significance. This conclusion is obviously consistent with the fact that on the demonstration of this device in court the rubber band feature was absent from plaintiff's device. Hence, we may consider the utility of the rubber band solely as an element the purpose of which is to draw the two plates of the mask against the beak of the fowl. Thus confined, it is our opinion that plaintiff soon learned that the pin passing through the lugs on each side of the two plates and through the membrane between the breather ducts of the fowl if properly adjusted would perform the same function. In this light, be it rubber band or pin, they serve the same purpose, and are equivalents.

Whether or not the mask consists of one plate or two plates is inconsequential, and in this conclusion we are not unmindful of the fact that the purpose of the two piece riveted mask was to permit the plates to be adjusted against the sides of the beak of the fowl. A one piece mask obviously would not permit this adjustment, but this distinction is without difference. Just as mere changes in form to accomplish substantially the same purpose will not avoid infringement, Lamson Co. v. G. & G. Atlas Systems, 2 Cir., 14 F.2d 22, Stockland v. Russell Grader Co., 8 Cir., 222 F. 906, Nathan v. Howard, 6 Cir., 143 F. 889, obviously claims based on changes in form will not constitute a material departure from a claim based on the original form.

The original patent is not an improvement patent but a basic one. It is held that a wider range of equivalents is permitted in such cases. Westinghouse v.

Boyden Power-Brake Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136, Miller v. Eagle Mfg. Co., 151 U.S. 186, 14 S.Ct. 310, 38 L. Ed. 121. We, therefore, conclude that a single unit mask without the rubber band feature comes within the wide range of permissible equivalents and hence does not constitute a broadening of the original patent as claimed by defendant.

Defendant's objections with reference to the addition of the swinging movement feature of the mask are also without merit. The drawings of the Jones Reissue patent reveal a pin member, Figure 1, No. 4, supra, passing through lugs on each side of the mask. The openings in the lugs are larger than the pin. This movement was, therefore, inevitable. Since this movement was disclosed in the original patent we cannot agree that specific reference thereto in the claims of the Reissue patent constitute a broadening of the original claim. ·

## 2. The patent contains new matter.

Defendant's objection with reference to alleged new matter appearing in the Reissue patent are not materially different from objections with reference to broadened claims, but are discussed separately in its brief before us. These objections concern the function of the rubber band. The Reissue patent states that the mask is positioned on the beak of the fowl and connected with the pin so as to permit swinging movement which is of particular significance in the event the mask should become caught on any obstruction. Under such condition the mask will readily swing forward as the fowl endeavors to effect a release. As the mask swings forward the rubber band contacts the beak of the fowl, and after the obstruction is removed the increased tension of the rubber band in opposite directions from the beak of the fowl will cause the mask to swing back in normal position.

We do not agree that there is new matter in the legal sense appearing in the Reissue patent. The Supreme Court in the case of Giant Powder Co. v. California Powder Works, 98 U.S. 126, 138, 25 L.Ed. 77, defined "new matter" to mean: " * * * new substantive matter, such as would have the effect of changing the invention, or of introducing what might be the subject of another application for a patent." The original patent provided for a yieldable means constantly urging the plates of the mask together. The Reissue patent only elaborates on the function of the resilient member. It is true that the function of the

rubber band was not disclosed in the original patent to the same extent as it was in the Reissue patent. The additional disclosures, however, do not change the invention or constitute in themselves patentable novelty.

## 3. Plaintiff is estopped from asserting Claims 5, 7 and 8.

■ This contention is based on the ground that these claims are invalid in that they were anticipated by Original Claim 2 of the first patent which was presented and abandoned, but finally allowed in a restricted scope. If this be the fact, plaintiff admits that claims submitted in an original application cannot be cancelled and abandoned and substituted in a reissue. Thus, our problem is one of construction.

Original Claim 2 as presented in the first patent provided as follows: "A mask as set forth comprising a relatively flat member having a beak receiving opening, and means for securing the member to the beak of a fowl in upstanding position." As allowed, this Claim provided as follows: "A mask as set forth comprising a relatively flat guard having a beak receiving opening, a forwardly extending lug on each side of the opening, and means for securing the guard to the beak of a fowl in upstanding position."

Original Claim 2 as presented provides for: (1) A flat member in an upstanding position, (2) a beak-receiving opening, and (3) means for securing the member to the beak of the fowl. This Claim may be considered in its relation to Claim 5 only, since it is defendant's contention that Claims 7 and 8 are substantially the same as Claim 5. The latter Claim provides for: (1) A member to straddle the beak of a fowl with the member normally extending upwardly from the beak, (2) with portions to lap the side portions of the beak at the rear thereof, and (3) a member extending through said lapped portions and the beak of the fowl to pivot the device to the beak.

We do not agree that Claim 2 as originally presented anticipates Reissue Claims 5, 7 and 8. The material parts of the former claim as presented are manifestly vague. The provision for a flat member in an upstanding position describes nothing with reference to its location on the beak of the fowl. Neither can we discern from the claim where the beak receiving opening is located. Finally, we cannot definitely ascertain how the member is attached to the beak of the fowl.

Reissue Claim 5 is diametrically different from Claim 2 as originally presented, because it is specific and cures the uncertainties of Original Claim 2. Furthermore, Claim 2 was not rejected as presented. It was allowed in an amplified form, the addition being an elaboration of the beak receiving opening so as to provide for "a forwardly extending lug on each side of the opening." We therefore conclude that plaintiff is not barred by its failure to insist upon the allowance of Original Claim 2 as presented.

### 4. The oath fails to show inadvertence, accident or mistake.

■ The oath states, among other things, that the specifications of the original patent failed to state clearly that the pin passed through the membrane in the beak of the fowl between the breather openings, and that the original patent failed to describe the intended swinging movement of the mask.

The defendant complains mainly of general allegations of inadvertence, accident and mistake, and asserts that plaintiff's failure to specify particularly is fatal. It cites the general rule that the grant of a reissue patent is prima facie evidence that the supporting oath was satisfactory to the Commissioner, but contends this rule is inapplicable where as in this case it is apparent on the face of the record that the Commissioner has exceeded his authority.

Defendant's discussion of this point is without merit because the oath does particularly specify omissions due to inadvertence, accident and mistake existing in the original patent as is apparent in our résumé of the contents of the oath supra. Accordingly, we cannot conclude that the reissue patent is void on this account, since the action of the Commissioner of Patents is conclusive in granting a reissue if there is any evidence before him tending to show inadvertence, accident or mistake. Peoria Target Co. v. Cleveland Target Co., 6 Cir., 58 F. 227; Union Switch & Signal Co. v. Louisville Frog, etc., Co., 6 Cir., 73 F.2d 550.

In the plaintiff's case there remains for discussion alleged infringement of trademark and unfair competition. Plaintiff avers that defendant in identifying its product as "Goggles" infringes upon its trademark "Specs". Another count alleges unfair competition based on the use of the word "Goggles", similar methods of advertising and distribution, and underselling practices.

Evidence tending to show plaintiff's right to the trademark "Specs" was introduced, as well as testimony showing the public's familiarity with the mark through the medium of numerous newspapers, magazines and the radio. Only one advertisement of defendant was produced to show infringement. This depicts a drawing of a chicken's head with defendant's mask containing lenses appearing thereon together with the word "Goggles", and defendant's name and address.

■ The case of McLean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828, makes the following observations with reference to trademark infringement: "What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled."

The test for unfair competition as material hereto is about the same. In the case of Martini & Rossi, etc., v. Consumers'-People's Products Co., Inc., et al., D.C., 57 F.2d 599, in a suit for unfair competition by use of labels the court stated: "The test is: Are the labels so similar that the public is likely to be confused?"

■ Thus, it appears that our problem is whether or not the ordinary purchasing public is likely to be misled by defendant's advertising. Comparing the two we note certain dissimilarities in the advertising schemes of the plaintiff and defendant. However, defendant has infringed plaintiff's patent by effecting changes in form, and in addition it uses the word "Goggles" to identify the infringing device. It is our opinion that the protection afforded trademarks extends not only to the mark actually used but extends to all simulations. Therefore the problem is whether or not the term "Goggles" comes within the unauthorized zone.

■ Dictionary definitions of the word "Goggles" uniformly describe it as a kind of spectacle. The meaning of the word to ordinary purchasers is certainly synonymous with "Specs". Evidence of this fact was produced at the trial in the form of three letters addressed by prospective purchasers to plaintiff for quotation of prices on "Specs" or "Goggles."

In view of patent infringement, together with defendant's use of the word "Goggles", we conclude that the ordinary public is likely to be confused, and that defendant is guilty of trademark infringement as well as unfair competition.

### Defendant's Counterclaim

Plaintiff prior to the institution of this suit and afterwards wrote various letters to the trade as well as advertising agents through whom it was customary to delegate advertising of the products of itself and the defendant. In one form letter to the advertising agents plaintiff stated that the defendant has made it his occupation "to attempt to chisel in and manufacture patented articles contrary to Federal Statutes," that he is making a "flagrant infringement upon the U. S. patents which we own," that "he has illegally infringed the Gawiler vent shield and the Layton Pick-Guard, putting these firms to the unfair expense of suing him in the Federal Courts to stop his infringement, that due to Rudolph's unsavory reputation and business tactics, leading poultry journals have refused to carry his advertising", and that "we are instituting suit in the federal court to stop Mr. Rudolph." Other letters were circulated charging unfair practice, piracy of patents, chiselling, unsavory reputation, skullduggery, bootlegging, unfair and illegal practices.

Defendant claims damages for libel and an injunction against plaintiff restraining it from publishing further similar statements. With reference to actual damages, defendant has shown numerous advertising agents have refused to handle its advertising.

Plaintiff as a defense relies upon the truth of the various statements, and also contends that defendant's advertising was rejected on grounds extrinsic to the alleged libels.

This issue would be important only in the event that plaintiff failed to establish a valid patent and infringement. However, that is not the fact, and consequently we feel that the complexion of this issue has changed considerably. Actually, defendant has appropriated plaintiff's patent, and plaintiff has epithetically described this conduct. We, therefore, conclude that defendant is not only in no position to assert "unclean hands" of the plaintiff based upon the above excerpts, but that he is not entitled to any of the relief prayed for in his counterclaim. Hence, it will be dismissed.