## HUBER *v.* NELSON MANUFACTURING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 143.   Argued March 16, 17, 1893. — Decided March 27, 1893.

Letters patent No. 260,232, granted June 27, 1882, to Henry Huber, as assignee of Stewart Peters and William Donald, of Glasgow, Scotland, for an "improvement in water-closets," the patent expressing on its face that it was "subject to the limitation prescribed by § 4887, Rev. Stat., by reason of English patent dated April 7, 1874, No. 1207," are void because the English patent had expired April 7, 1881.

Reissued letters patent No. 10,826, granted to James E. Boyle, April 19, 1887, for an improvement in flushing apparatus for water-closets, on the reissue of original patent No. 291,139, granted to Boyle January 1, 1884, the application for the reissue having been filed January 2, 1885, are void, as to claims 1 and 2 of the reissue.

Every claim of the original patent contained, as an element, a flushing chamber, and no claim of the reissue which leaves out a flushing chamber can be construed as valid.

There is new matter in the reissue specification inserted to lay a foundation for the expanded claims in the reissue.

There is nothing in the original patent which suggests the possibility that Boyle's invention could be operated by a combination which omitted the flushing chamber as an element thereof.

IN EQUITY, to prevent the infringement of letters patent, and for damages for such infringement. Decree dismissing the bill, from which the plaintiffs appealed. The case is stated in the opinion.

*Mr. Arthur S. Browne* and *Mr. Phillip Mauro* for appellants. *Mr. Anthony Pollok* and *Mr. Paul Bakewell* were with them on the brief.

*Mr. Seneca N. Taylor* and *Mr. Benjamin F. Rex* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a bill in equity, filed October 3, 1887, in the Circuit Court of the United States for the Eastern Division of the Eastern District of Missouri, by Henry Huber and James E. Boyle, as plaintiffs, against the N. O. Nelson Manufacturing Company, a Missouri corporation, for the alleged infringement of two patents.

The first patent sued upon was granted June 27, 1882, No. 260,232, for an "improvement in water-closets," to Henry Huber, one of the plaintiffs, as assignee of Stewart Peters and William Donald, of Glasgow, Scotland. That patent sets forth that Peters and Donald had presented a petition for the grant of a patent for such improvement, and had assigned their right, title and interest in it to Huber, and that a description of the invention was contained in the specification annexed to the patent, and the patent granted to Huber, his heirs or assigns, for seventeen years from June 27, 1882, the exclusive right to make, use and vend the invention through-

out the United States and the Territories thereof, "subject to the limitation prescribed by sec. 4887, Rev. Stat., by reason of English patent, dated April 7, 1874, No. 1207."

The answer of the defendant avers that, although the British patent, No. 1207, was granted to Peters and Donald on April 7, 1874, for fourteen years from that date, it was subject to the provisions and conditions of § 2 of chapter 5 of the act of 16 Victoria, approved February 21, 1853, and to the condition thereunder that, if Peters and Donald, their executors, administrators or assigns, did not pay a stamp duty of £100 on the patent, before the expiration of seven years from its date, it should become void; that such duty was not paid, but the patentees voluntarily allowed the patent to expire at the end of seven years from its date; and that it became void thereby, and, since April 7, 1881, has been of no force or effect.

The English patent covered the same invention which is covered by United States patent No. 260,232. Peters and Donald assigned all their interest in the invention to James E. Boyle, October 27, 1881. The application for the United States patent was filed November 29, 1881; and, after the patent was granted, Boyle assigned his interest to Huber, November 26, 1881. Thus it appears that the application for No. 260,232 was filed more than seven months after the English patent to Peters and Donald had become void, and that the invention was assigned by Peters and Donald to Boyle more than six months after that patent had become void.

Sections 4886 and 4887 of the Revised Statutes (which were taken from §§ 24 and 25 of the act of July 8, 1870, c. 230, 16 Stat. 201) read as follows:

"SEC. 4886. Any person who has invented or discovered any new and useful art, machine, manufacture or composition of matter, or any new and useful improvement thereof, not known or used by others in this country, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, and not in public use or on sale for more than two years prior to his

application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceedings had, obtain a patent therefor.

"Sec. 4887. No person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented or caused to be patented in a foreign country, unless the same has been introduced into public use in the United States for more than two years prior to the application. But every patent granted for an invention which has been previously patented in a foreign country shall be so limited as to expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term, and in no case shall it be in force more than seventeen years."

It was contended for the defendant in the Circuit Court, and was so held by that court, that patent No. 260,232 was void, under § 4887 of the Revised Statutes, because it was granted after the English patent to Peters and Donald had ceased to exist. The opinion of Judge Thayer, who held the Circuit Court, is reported in 38 Fed. Rep. 830. The facts above set forth are undisputed. Judge Thayer held that, under the decision of this court in *Bate Refrigerating Co.* v. *Hammond,* 129 U. S. 151, patent No. 260,232 was void.

In *Bate Refrigerating Co.* v. *Hammond,* a United States patent had been granted November 20, 1877, for seventeen years on an application filed December 1, 1876. A patent for the same invention had been granted in Canada, January 9, 1877, to the same patentee, for five years from that day, on an application made December 19, 1876. On a petition filed in Canada by the patentee, December 5, 1881, the Canada patent, on December 12, 1881, was extended for five years from January 9, 1882, and on December 13, 1881, for five years from January 9, 1887, under § 17 of the Canada act assented to June 14, 1872, (35 Vict., c. 26.) On those facts, this court held, under § 4887 of the Revised Statutes, that, as the Canada act was in force when the United States patent was applied for and issued, and the Canada extension was a

matter of right, at the option of the patentee, on his payment of a required fee, and the fifteen years term of the Canada patent had been continuous and without interruption, the United States patent did not expire before the end of the fifteen years duration of the Canada patent. Of course, the Canada patent was in force when the United States patent was granted, and the question presented in the present case did not distinctly arise. Judge Thayer held, that it was a logical conclusion from the decision in *Bate Refrigerating Co.* v. *Hammond* that a United States patent which was issued subject to the provisions of § 4887 remained in force no longer than the foreign patent having the shortest term; and that the omission to do an act required by the foreign law, which worked an absolute forfeiture of the foreign grant, extinguished the United States patent.

The Circuit Court also held that, as § 4887 enacted that the United States patent granted for an invention which had been previously patented in a foreign country should be so limited as to expire at the same time with the foreign patent, it presupposed that, at the date of the United States patent, there was in force a foreign patent for the invention; and that, if there was no such foreign patent in force when the United States patent issued, but only one which had lapsed and become void, although theretofore granted for the invention, there was no authority in law for the United States grant. In other words, the moment patent No. 260,232 was granted, § 4887 took effect upon it, and caused it to expire in the same instant in which it was created, or to be strangled in its birth.

The final decree of the Circuit Court in the present case was entered May 25, 1889. It decreed among other things that No. 260,232 was issued without authority of law, and was null and void. Since that time, and on March 24, 1890, this court decided the case of *Pohl* v. *Anchor Brewing Co.*, 134 U. S. 385, in which we held that a United States patent ran for the term for which the prior foreign patent was granted, without reference to whether the latter patent became lapsed and forfeited, after the grant of the United States patent, by reason

of the failure of the patentee to comply with the requirements of the foreign patent law. But that case did not distinctly cover the present one, because in that case the foreign patent was in force when the United States patent was granted; and it became lapsed or forfeited thereafter, in consequence of the failure of the patentee to comply with the requirements of the foreign patent law.

We are of opinion that, as in the case at bar the foreign patent was not in force when the United States patent was issued, the latter patent never had any force or validity. The delay in applying for the United States patent, until after the foreign patent expired, amounted to an abandonment of the right to a United States patent. This is in accordance with the view of the Commissioner of Patents in *Mushet's Case*, (Commissioner's Decisions of 1870, p. 106.)

The other patent sued on in the present case is reissued letters patent No. 10,826, granted to James E. Boyle, April 19, 1887, for an improvement in flushing apparatus for water-closets, claims 1 and 2 of which are alleged to have been infringed. The original patent, No. 291,139, was granted to Boyle, January 1, 1884, and the application for the reissue was filed January 2, 1885.

The answer sets up the invalidity of such reissue, and avers that the original patent was not inoperative or invalid by reason of an insufficient or defective specification, but was surrendered, after unreasonable delay, solely for the purpose of enlarging the specification and claims, and to cover improvements not within the contemplation of Boyle when he filed his original application and received his original patent; that the claims of the reissue unduly broadened the original patent; that the further design of Boyle in asking for the reissue was to cover apparatus placed upon the market before such reissue was applied for, by Frank B. Hanson, under letters patent No. 308,358, issued to Hanson, November 25, 1884, but applied for June 12, 1883; that said reissue No. 10,826, and especially claims 1, 2 and 4 thereof, were not for any invention described, indicated or suggested in the original patent No. 291,139; that the Commissioner of Patents exceeded his authority in grant-

ing such reissue; and that said claims and such reissue were void from the beginning.

The Circuit Court, in its decree entered May 25, 1889, adjudged that claims 1 and 2 of such reissue were granted without authority of law and were null and void; that the defendant had not infringed any of the remaining claims of such reissue (the whole number of claims being six); and that the bill be dismissed with costs. The plaintiffs appealed to this court from the entire decree. James E. Boyle having died during the pendency of the appeal, his administrator has been substituted as a party.

Judge Thayer, in his opinion, 38 Fed. Rep. 830, goes very fully into the question of the validity of the reissue. In order that the claims of the original and reissue patents may be more readily compared, they are here produced in parallel columns, the italicized words in each claim of one patent showing wherein it differs from the corresponding claim in the other patent:

| *Original Patent.* | *Reissue Patent.* |
|---|---|
| | " 1. *A water-closet consisting of a bowl, with the soil-passage leading therefrom and two successive traps in said passage,* in combination with a flushing-pipe for conveying water to the bowl, a suction-injector arranged in connection with said pipe and to be traversed by the flushing water, and an air-pipe leading from the air-space between said traps and communicating with said injector, substantially as set forth, whereby the flow of water through said injector serves to draw air from said air-space.* |

" 1. A flushing apparatus for water-closets, consisting of a reservoir-tank, a flushing-*chamber adapted to be filled therefrom, a* valve controlling *the admission of water from said tank to said chamber,* a suction-injector arranged *beneath the outlet from said chamber,* a flushing-pipe *leading from said injector,* and a suction *or air* pipe *communicating* with said injector, *all combined and arranged substantially as set forth,* whereby the water in *escaping.* from said *chamber into* the flushing-pipe traverses said injector, and sucks the air from said suction-pipe.

" 2. The combination of a reservoir-tank, a flushing-chamber, a valve controlling the admission of water from said tank to said chamber, a suction-pipe *terminating at the upper part* of said chamber, an injector beneath the outlet from said chamber, a flushing-pipe leading downward from said injector, and a suction-passage affording communication from said injector to said suction-pipe, substantially as and for the purposes set forth.

" 3. A flushing apparatus for water-closets, consisting of

" 2. A flushing apparatus for water-closets, consisting of *the combination of* a reservoir-tank, a flushing-valve controlling *the outlet thereof,* a flushing-pipe *for conveying water therefrom to the bowl of the closet,* a suction-injector arranged *in connection with said pipe and to be traversed by the descending flushing water,* and a suction-pipe *in connection* with said injector, whereby the water in *flowing* from said *tank downward throuy* · the flushing-pipe traverses said injector and sucks the air from said suction-pipe.

" 3. The combination of a reservoir-tank, a flushing-chamber, a valve controlling the admission of water from said tank to said chamber, a suction-pipe, *communicating with the interior* of said chamber, an injector beneath the outlet from said chamber, a flushing-pipe leading downward from said injector, and a suction-passage affording communication from said injector to said suction-pipe, substantially as and for the purposes set forth.

" 4. A flushing apparatus for water-closets, consisting

a reservoir-tank, a flushing-*chamber, a* valve controlling the *admission of water from said tank to said chamber*, a suction-injector *beneath the outlet from said chamber*, a flushing-pipe *leading downward from said injector*, a suction *or air* pipe *opening into the upper part of said chamber, and a suction-passage extending from said pipe to said injector*, whereby the passage of water through said injector *into the flushing-pipe* will *develop a suction in* said *suction-passage and* suction-pipe, *in combination with means, substantially as described, for admitting air to* said *suction-passage or pipe, and so breaking the vacuum therein before all the water has escaped from the chamber, whereby an after-wash is secured, all combined and arranged to operate* substantially as set forth.

"4. *In* combination, the tank E, the chamber F, provided with inlet-orifice *h'* and outlet-orifice *i*, the valve *h*, the suction-injector I, the flushing-pipe *l*, the air-pipe *e*, the suction-passage *t*, and the air-bell *n*, substantially as set forth.

"5. A flushing apparatus

of a reservoir-tank, a flushing-valve controlling the *outlet thereof*, a flushing-pipe *for conveying water therefrom to the bowl of the closet*, a suction-injector *arranged in connection with said pipe and to be traversed by the descending flushing-water, and* a suction-pipe *in connection with said injector*, whereby the passage of water through said injector will *suck the air from* said suction-pipe, *all combined together, and with a trapped air-passage communicating with the said suction-pipe and arranged to be unsealed, and thereby to admit air to the suction-pipe and break the vacuum therein before the cessation of the flow of flushing-water*, substantially as set forth

"5. *The* combination *of* the tank E, the chamber F, provided with inlet-orifice *h'*, and outlet-orifice *i*, the valve *h*, the suction-injector I, the flushing-pipe *l*, the air-pipe *e*, the suction-passage *t*, and the air-bell *n*, substantially as set forth.

"6. A flushing apparatus

for a water-closet, consisting of the combination of a reservoir-tank, a flushing-chamber provided with an inlet-orifice of large area communicating with said tank, and with an outlet-orifice of contracted area proportioned to the area of said inlet-orifice, substantially as specified, a valve adapted to close said inlet-orifice, an air-pipe opening into said flushing-chamber, and a flushing-pipe leading from said outlet-orifice, all arranged and adapted to operate substantially as set forth.

"6. *The combination, with tank E and chamber F, of the valve* h *thereof, its stem consisting of an overflow tube,* m, *and a sealing cup* m', *below the valve, in which cup the lower end of the overflow tube is immersed, substantially as set forth.*"

for a water-closet, consisting of the combination of a reservoir-tank, a flushing-chamber provided with an inlet-orifice of large area, communicating with said tank and with an outlet-orifice of contracted area proportioned to the area of said inlet-orifice, substantially as specified, a valve adapted to close said inlet-orifice, an air-pipe opening into said flushing-chamber and a flushing-pipe leading from said outlet-orifice, as arranged and adapted and operate substantially as c' forth."

In each of the six claims of the original patent, the flushing chamber F is made an element of the combination. Claim 6 of the reissue is substantially identical with claim 5 of the original, claim 5 of the reissue with claim 4 of the original, and claim 3 of the reissue with claim 2 of the original. Claim 4 of the reissue is in some respects similar to claim 3 of the original, but it omits the flushing chamber F, and mentions in its place a flushing valve, thus making a different combatio. Neither the specification of the original nor any of its claim, corresponds with or suggests the first two claims of the reissue.

Parts of the two specifications are here placed by us side by side, in order that the additions in the reissue to what was in the original may be distinctly seen, the additions in the reissue being printed in italics:

*Old Specification.*

The diagram, Fig. 6, is designed to illustrate the essential principle of my present invention even more clearly than the preceding figures. The air-pipe e does not enter the chamber F, but is connected by a branch with the flushing-pipe l below the chamber, the injector I being arranged at their junction. The valve g' is shown merely to prevent water setting back and flowing down the pipe e, since the top of this pipe is below the water level x x, instead of above it, as before.

*New Specification.*

The diagram, Fig. 6, is designed to illustrate the essential principle of my present invention even more clearly than the preceding figures. The air-pipe e does not enter the chamber F, but is connected by a branch with the flushing-pipe l below the chamber, the injector I being arranged at their junction. The *check* valve g' is shown merely to prevent water setting back and flowing down the pipe e, since the top of this pipe is below the water level x x, instead of above it, as before. *When the flushing-valve h is lifted the water from the tank E flows down the flushing-pipe l, and through the injector I, thus drawing air from the pipe e during the whole time that the water continues to flow through the injector. In this construction the chamber F has no function of its own, and constitutes essentially a mere enlargement of the upper portion of the flushing-pipe, to the same effect as*

No provision for securing an after-wash is here shown, but the bowl may be refilled after the flushing by any suitable means, as by water admitted by a valve through an independent flushing-pipe.

*the ordinary "service-box" commonly used by plumbers.* No provision for securing an after-wash is here shown, but the bowl may be refilled after the flushing by any suitable means — as, *for instance,* by water admitted by a valve through an independent flushing-pipe, *as shown in the patent of Peters and Donald, No. 260,232, dated June 27, 1882.*

In the opinion of Judge Thayer, it is correctly said: "In the construction of the 'flushing apparatus' or water-closet covered by the original letters, Boyle, the inventor, employed what is commonly called an 'injector' to exhaust the air confined between two traps located beneath the bowl or seat of the 'flushing apparatus.' The apparatus was so arranged that when in use water falling through a pipe from the water-tank or reservoir into the bowl passed by the mouth of the 'injector,' which was connected by a pipe with the confined air chamber between the traps, and by the operation of a well-known principle tended to exhaust the air and to create a vacuum in such chamber; the purpose of creating a vacuum being to induce a more powerful outflow of water from the bowl through the traps and into the soil pipe, by the aid of atmospheric pressure on the surface of the water in the bowl. The idea of constructing a water-closet or flushing apparatus with double traps underneath the seat, and a confined air chamber between the same, from which the air might be withdrawn when the closet was used, so as to induce a more powerful outflow, was not novel. The same method of construction was shown in the Peters and Donald patent before mentioned, but Peters and Donald employed a different device to exhaust the air between the traps. Although injectors and the principle upon which they were operated were well known, and

although they were in use for various purposes, it may be conceded that Boyle was the first to employ them in the construction of a flushing apparatus or water-closet. Being an old device, he could not claim the injector, independently, or otherwise than in combination with other devices forming a part of his improved sanitary water-closet. The first and most important claim in the original letters patent was for 'a flushing apparatus consisting of a reservoir tank, a flushing-chamber adapted to be filled therefrom, a valve controlling the admission of water from said tank to said chamber, a suction injector arranged beneath the outlet from said chamber, a flushing pipe leading from said injector, and a suction or air pipe communicating with said injector, all combined . . . substantially as set forth, whereby the water in escaping from said chamber into the flushing pipe, traverses said injector and sucks air from said suction pipe.' It will thus be seen that the 'injector' was one of six elements in the combination covered by the first claim of the original letters, No. 291,139."

In the affidavit made by Boyle, on December 27, 1884, to accompany his application for the reissue, he states that he believes his patent No. 291,139 "to be inoperative to fully protect the invention intended to be covered by it, for the following reason, namely, that the principal claims in said patent are defective or insufficient in that they are, or appear to be, limited to combinations embodying the 'flushing-chamber F' as an essential element, whereas that chamber is not essential to his invention in its generic features;" that, as stated in the specification of the original patent, his invention introduced "a new principle for operating double-trapped or siphon water-closets; namely, that of producing the requisite vacuum by causing the falling flushing water to act as an injector and draw air along with it," and that through inadvertence or mistake of judgment his claims were drawn with less breadth than his specification and do not, as they should, cover broadly the application of such principle; that such inadvertence or mistake arose by and in consequence of a misunderstanding between him and his attorney, Mr. Arthur C. Fraser, of the firm of Burke, Fraser & Connett, who prepared the applica-

tion for the patent, and also by reason of Boyle's want of familiarity with the technical meaning of the language used in patent claims, and that the same arose without any fraudulent or deceptive intention; that, in his early experiments with the invention, he devised and tested various forms and modifications of mechanism, and among others the three constructions shown by sketches which he annexed to the affidavit, and which sketches he describes as each showing a water-tank with an outlet valve, a flushing-pipe extending down to the closet bowl, an injector therein, a suction or air pipe extending to the air-space between the two traps below, and a lever for working the valve; that in one of such sketches the suction or air pipe joined the flushing-pipe by an elbow, their point of junction constituting the injector; that in another there was the same construction, except that the end of the suction or air pipe entered the flushing-pipe and turned down therein, forming a more perfect injector; that in the third, the suction or air pipe extended over the top of the tank and was connected by a rubber tube with the tubular valve-stem of the outlet valve, the bottom of the stem extending below the valve and into the flushing-pipe far enough to constitute an injector; that those constructions were all made and operated by him before January 1, 1882; that they all worked satisfactorily in siphoning the closet, but embodied no means for giving an "after-wash" for filling the bowl after the flushing; that in supplying such means he modified the construction and adopted those constructions which are shown in Figures 1, 4, and 5 of his original patent; that in describing his invention to his said attorney, he did not describe the first constructions devised by him and shown in the said three sketches, but only the preferred constructions; that on or about November 28, 1884, he observed in the Patent Office Gazette the report of a patent No. 308,358, granted November 25, 1884, to Frank B. Hanson, showing Boyle's said invention in a form almost identical with one of the said constructions originally invented by Boyle; that he thereupon consulted with his attorney to ascertain how such a patent came to be issued to Hanson; that his said attorney, in the course of a

few days, advised him of the defect or insufficiency in his said original patent; that, prior to being so advised, Boyle had no suspicion that his said patent was in anywise defective or insufficient; that he thereupon instructed his attorney. to prepare an application for reissue of his said patent; that, believing that he, and not Hanson, was the original inventor of the subject-matter thereof, he demanded of the Commissioner of Patents the declaration of an interference with Hanson's patent; that, so far as he was aware, no interest had arisen adverse to the grant of the reissue which he applied for, either in favor of Hanson or of any other person; and that, so far as he was aware, his patent had not been infringed, nor had any attempt been made to imitate or evade the same, except by Hanson.

One of the claims of the patent issued to Hanson covers a flushing apparatus substantially the same as that described in claim 1 of the original patent to Boyle, omitting only the "flushing-chamber."

The view taken by Judge Thayer was that the sole purpose of Boyle, in asking for a reissue, was to eliminate the "flushing-chamber," as a constituent element of the combination covered by certain claims of the original patent to Boyle, particularly of claim 1, and to obtain a patent for a flushing apparatus like that described in said claim 1, less the flushing-chamber, and so claim 2 of the reissue was granted in the terms above set forth, omitting the flushing-chamber from the combination. It was omitted also from claim 1 of the reissue. The effect of this was to expand the claims of the original patent, because they had been limited by including the "flushing-chamber" as an element of the combination.

It is contended for the plaintiffs that the main feature of Boyle's flushing apparatus consisted in the use of an injector operated by falling flushing water, to pump air from between the two traps; that that fact was shown and spoken of in the original specification; that the flushing-chamber was not essential to the operation of that device, a single reservoir tank being sufficient for the purpose; that by inadvertence or mistake a non-essential limitation was put upon such claims

of the original patent as covered the injector device; that in consequence thereof the original patent was inoperative to secure the invention intended to be claimed; and that the patent, therefore, was properly reissued, the claims having simply been altered to cover more accurately the invention described in the original specification.

The opinion of the Circuit Court, in speaking of the contention that the original patent was inoperative to protect the invention intended to be covered by it, said that such patent certainly protected the flushing apparatus that was claimed as a whole in the first claim, and carefully described in the specification; that it protected also all the combinations which were claimed in its several claims; that it was not necessary to change the specification or the drawings to secure fully the apparatus claimed in the several claims of the original patent; that that was the identical apparatus which Boyle intended to manufacture; that, therefore, it could not be said that the original patent was " inoperative or invalid " in the sense that Boyle could not hold what he claimed, and intended to manufacture, because his original specification was either defective or insufficient; that what Boyle meant by asserting that the original patent was inoperative was only that a particular combination of parts might have been claimed originally that was not claimed, and that his original patent was inoperative to protect such particular combination, because no right to the protection of it had been asserted; that, even conceding that the original patent was " inoperative " in the sense in which that word is used in § 4916 of the Revised Statutes, the question remained whether the failure to claim what the original patent did not protect because it was not claimed therein, was due to " inadvertence, accident or mistake " in the sense of the statute; that all of the evidence which was before the Commissioner of Patents, tending to show inadvertence or mistake, (that is, the affidavit of Boyle, that of Fraser, and other documents,) was offered by the plaintiffs in the present suit, supplemented by some additional testimony; and that, under those circumstances, the Circuit Court could review the finding of the Commissioner on the point

that the original patent was inoperative by reason of inadvertence and mistake, at least to the extent of determining whether, as a matter of law, what was alleged to be a mistake was such a mistake as warranted a reissue.

Mr. Fraser, the attorney who obtained the original patent as well as the reissue, said in his affidavit presented to the Patent Office with the application for the reissue, that he clearly understood "that the invention in question introduced a new principle in water-closet flushing apparatus, that of exhausting the air by means of an injector, and so described the invention in the specification, but that in drawing the claims he inadvertently incorporated the flushing-chamber as an element therein, being at the time under the impression that the said flushing-chamber was essential to the operation of the invention, whereas in fact, the said chamber is essential only to the operativeness of the devices for producing the 'after-wash' for refilling the bowl, which devices are claimed specifically in claim 4 of said patent;" that he was not then aware that Boyle had used the flushing apparatus with a single tank, from which the flushing pipe led directly, thereby omitting the flushing-chamber beneath the tank, nor did it occur to Fraser at that time that the invention was susceptible of being so modified; that he drew the first three claims of the original patent, as granted, through a misapprehension of the essentials of the invention, arising from a misunderstanding between himself and Boyle, without any fraudulent or deceptive intention on the part of either; that Fraser was not aware of the defect or insufficiency in the patent until after he saw the patent of Hanson, No. 308,358; and that, after examining that patent and ascertaining the circumstances of its grant, he advised Boyle that Hanson had secured a patent covering Boyle's prior invention and counselled Boyle to apply for a reissue of his patent and to demand an interference with the patent of Hanson.

The Circuit Court further observed that Mr. Fraser's explanation showed that he understood that the falling flushing-water traversing the injector would perform its function of pumping air from between the traps equally well, whether the

water proceeded from a reservoir having one compartment or one having a dozen; that such fact was obvious to any observer who had any knowledge of the principle upon which an injector acts; that Fraser, therefore, must be understood as asserting merely that he incorporated the flushing-chamber as an element in the several combinations claimed in the original patent, because he intended to describe and claim an operative flushing apparatus or water-closet which would prove a marketable invention; that it was manifest from other statements made by Fraser in the course of his testimony, that in his opinion a flushing apparatus minus the flushing-chamber with its attendant devices for securing an after-wash would be practically useless; that some provision for refilling the bowl after the injector had ceased to act was essential to the successful operation of the flushing apparatus or water-closet, considered as a whole; and that, in drafting the several claims of the original patent, he intentionally and, as it would seem, with great care, included the flushing-chamber, for the reason that it was one of the essential parts of the flushing apparatus, without which the latter would not be serviceable.

The opinion also states that Boyle's affidavit, filed with the application for the reissue, describes no mistake, inadvertence or accident; that Boyle contents himself with the general statement that a misunderstanding existed between him and his attorney, but what it was does not appear; that, from his testimony in the present suit, it was manifest that Boyle, as well as Fraser, was of the opinion, when the original patent was granted, that a flushing apparatus constructed according to Boyle's design, but without the flushing-chamber to secure an after-wash, would be valueless, because it would command no sale; that Boyle admitted that he had made a flushing apparatus minus the flushing-chamber, which was not satisfactory, was not intended to be operative, and was not intended as a design for a water-closet that he expected to manufacture or sell; that if Boyle and Fraser made any mistake, or labored under any misapprehension when the original patent was taken out, it consisted in the assumption that the omission of a flushing-chamber on which the after-wash devices depended, and

without which there was no means (so far as Boyle had then discovered) of securing an after-wash automatically, would leave a valueless combination, and hence that there was no need of claiming ·such a combination; and that, when the statements of Boyle· and Fraser were fairly analyzed, such appeared to be all that could reasonably be said in support of the contention that the claims of the original patent were due to inadvertence and mistake.

The opinion further states that the testimony showed, to the entire satisfaction of the court, that Fraser was right in supposing that Boyle's flushing apparatus, without the flushing-chamber, would be incomplete and therefore practically value-less; that Hanson, whose patent covered a water-closet having a single water reservoir and an injector, but no flushing-chamber or provision for an after-wash, and who caused Boyle to apply for the reissue in question to invalidate Hanson's patent, admitted that a water-closet constructed according to the specification of the Hanson patent was defective and unsalable, and for that reason had never been put upon the market; that Boyle, Fraser, and Hanson substantially agreed in their testimony that some mechanism to secure automatically an after-wash, that is, to flush the closet and refill the bowl at the end of the flushing by ·a single pull at the lever, was essential to the successful operation of a flushing apparatus; that, without such mechanism, an apparatus constructed·with double traps and an injector to exhaust the air between the traps would be useless, in the sense that there would be no demand for such an apparatus; and that it would seem that Boyle displayed as much ingenuity (if not more) in devising the mechanism to produce an after-wash as in employing an injector, which was an old device, to pump air from between the traps.

The opinion then cites the cases of *Miller* v. *Brass Company*, 104 U. S. 350, 355; *Mahn* v. *Harwood*, 112 U. S. 354, 359; and *Coon* v. *Wilson*, 113 U. S. 268, 277, to the effect that a patent for an invention could not be lawfully reissued for the mere purpose of enlarging the claim, unless a clear mistake had been inadvertently committed in the wording of the claim.

The opinion of the Circuit Court further said that the testi-mony did not tend to establish that either Boyle or Fraser acted so inadvertently or under such misapprehension of either law or fact, when the claims of the original patent were formulated, as to justify a reissue of the patent; that it was obvious to them, as to any one, that the injector would perform its function as well with a single tank as with a tank and flushing-chamber combined; that both of them believed that a water-closet constructed according to Boyle's design, but without provision for an after-wash, would be valueless in the market; that in that belief they were right; that Boyle had discovered no method of producing an after-wash auto-matically by using a single water-tank, and hence both he and Fraser regarded the flushing-chamber as one of the essential features of the flushing apparatus intended to be manufac-tured, and accordingly claimed it industriously in all of the important claims; that even though they claimed the injector in combination with a part which was non-essential to its operation, and thereby limited the claim, yet they did so in pursuance of a well-defined purpose, not based upon a miscon-ception of matters of fact or ignorance of law, so far as the records before the Commissioner of Patents or the proof in this case showed; that the injector was an old device when Boyle adopted it; that it could be claimed only in combination with other parts which would together produce a new result or effect, or constitute a new machine; that Boyle placed the injector, in combination with certain other old parts or devices which he deemed it necessary to employ, to make a new flush-ing apparatus that would be operative and useful; that by so doing he made each element of the combination material, and was entitled to be protected in the use of the combination so formed and claimed; that his sole purpose in asking for a reissue was to slough off one element of the combination, and so reduce the parts embraced in the claim that it would be impossible for any other person to use an injector in the construction of a double-trapped water-closet, without paying tribute to his patent; and that as the claims are enlarged in the reissue, it would be unlawful for a mechanic to use an

injector in the construction of a flushing apparatus, even if he should succeed in doing what Boyle failed to accomplish, that is to say, produce an after-wash automatically by the use of a single tank, because the parts with which the injector has been combined in the claims of the reissue are so few that they must necessarily all be used to work the injector.

The opinion further observed that if the injector were new with Boyle, and had not been claimed in the original patent, it might be proper to interpret the law liberally in favor of Boyle, to enable him to realize the full benefit of his invention; that an injector is an old device, and Boyle merely adopted it and applied it to a new use; and that he ought to be limited to that combination in which he deliberately placed and claimed it.

The conclusion of the opinion was that the reissue, being granted merely to enlarge the claims, could not be sustained, citing *Burr* v. *Duryee*, 1 Wall. 531, and *Gill* v. *Wells*, 22 Wall. 1; that the failure to claim the particular combination not claimed in the original patent but claimed in the reissue, was not due to any such inadvertence or mistake as would authorize the claiming of it in the reissue; and that the failure to claim such combination originally occurred under such circumstances, and was accompanied with such full knowledge of all material facts, as to amount to an abandonment of that particular combination to the public.

We are unanimously of opinion that these views of the Circuit Court are sound; and that it is unnecessary to consider the point made by the defendant that the reissue was invalid because it lacked novelty and invention. It is not contended that the defendant has infringed any other claims of the reissue than claims 1 and 2; and we think it entirely clear that the defendant has not infringed any of the claims of the original patent. The defendant had no flushing-chamber in any flushing apparatus made by it; and such flushing-chamber was an essential element in the specification and drawings of the original patent, and was one of the necessary elements in each of the six claims of the original patent, as made. It is impossible to examine the drawings of the original patent and

see that the flushing-chamber could be dispensed with in the structure. The original specification says that the invention of Boyle "has for its principal object to cheapen and simplify the overhead flushing apparatus." If the idea of constructing an apparatus without the flushing-chamber had occurred to Boyle, he would have set forth such a construction in one of the figures of his drawings, because the omission of the flushing-chamber would have promoted both cheapness and simplicity. The drawings, however, contradict the possibility of making the structure without a flushing-chamber. The entire text of the original specification shows nothing but the invention of a structure containing both a tank and a flushing-chamber. That chamber is referred to in the text of the original specification thirty-one times.

We think that, on all the facts of this case, no one of the claims of the reissue can be construed as valid in leaving out the flushing-chamber as an element of the combination, inasmuch as every claim of the original patent contained it. *Prouty* v. *Ruggles,* 16 Pet. 336, 341; *Brookes* v. *Fiske,* 15 How. 212, 219; *Burr* v. *Duryee,* 1 Wall. 531; *Reckendorfer* v. *Faber,* 92 U. S. 347; *Fuller* v. *Yentzer,* 94 U. S. 288; *Railway Co.* v. *Sayles,* 97 U. S. 554; *Water-Meter Co.* v. *Desper,* 101 U. S. 332.

Moreover, the matter above printed in italics, in the right-hand column, taken from the new specification, is new matter, inserted evidently for the purpose of laying a foundation for the two expanded claims in the reissue, which it is alleged the defendant infringes. In the reissue, the flushing-chamber forms an element in the combination claimed in each claim except claims 1, 2 and 4; and to lay the foundation for leaving out the flushing-chamber as an element in claims 1, 2 and 4 of the reissue, the statement is made in the specification of the reissue of the new matter that the flushing-chamber "has no function of its own, and constitutes essentially a mere enlargement of the upper portion of the flushing-pipe, to the same effect as the ordinary 'service-box' commonly used by plumbers."

In the specification of the original patent, the flushing-

chamber had been made an essential element in each of the six claims. The application for the Hanson patent was filed in the Patent Office, June 12, 1883, although the patent was not granted until November 25, 1884, and it was pending in the Patent Office during more than six months before Boyle's original patent, No. 291,139, was granted, January 1, 1884. The Hanson patent shows a flushing apparatus wherein the injector principle is used for exhausting the air in the confined space between the two traps, by the use of one tank containing water for flushing the basin. It was not until Boyle obtained knowledge of the Hanson patent that he conceived the idea of claiming such a construction as had been patented to Hanson. Then, and not until then, he announced the idea that it was of value to do away with the flushing-chamber, although the specification of his original patent, in its text and drawings and claims, emphasized the importance of the flushing-chamber as an element in every one of his combinations. The specification, drawings and claims of the original patent do not suggest the idea that the flushing-chamber " has no function of its own." There is nothing in the original patent which suggests any such combination as is claimed in claims 1, 2 and 4 of the reissue, or which suggests the possibility that Boyle's invention could be operated by a combination which omitted the flushing-chamber as an element thereof. Every one of the elements which is made a part of the several combinations claimed in the original patent is thereby made material to such combinations. *Eames* v. *Godfrey*, 1 Wall. 78; *Burr* v. *Duryee*, 1 Wall. 531; *Case* v. *Brown*, 2 Wall. 320; *Gould* v. *Rees*, 15 Wall. 187; *Gill* v. *Wells*, 22 Wall. 1; *Fuller* v. *Yentzer*, 94 U. S. 288; *Powder Co.* v. *Powder Works*, 98 U. S. 126; *Leggett* v. *Avery*, 101 U. S. 256; *James* v. *Campbell*, 104 U. S. 356; *Coon* v. *Wilson*, 113 U. S. 268; *Parker & Whipple Co.* v. *Yale Clock Co.*, 123 U. S. 87; *Electric Gas Lighting Co.* v. *Boston Electric Co.*, 139 U. S. 481; *Topliff* v. *Topliff*, 145 U. S. 156.

*Decree affirmed.*