## BROCKTON HEEL CO., Inc., v. INTERNATIONAL SHOE CO.

District Court, D. New Hampshire. April 22, 1927.

### No. 140.

Patents ⊜⟶328—1,193,756, for process for building heel log sections, held not infringed.

The Bosworth patent, No. 1,193,756, for process of building heel log sections, *held* not infringed.

In Equity. Suit by the Brockton Heel Company, Inc., against the International Shoe Company. Decree for defendant.

Marcus B. May and Herbert A. Baker, both of Boston, Mass., for plaintiff.

Sullivan & White, of Manchester, N. H., and Bruce S. Elliott, of St. Louis, Mo., for defendant.

MORRIS, District Judge. This is a bill in equity to enjoin infringement of letters patent No. 1,193,756, granted August 8, 1916, to Wendell P. Bosworth, assignor, to the plaintiff, Brockton Heel Company, Inc.

The issuance of the letters patent and the title in the plaintiff are conceded. The plaintiff relies on all claims in the patent except

claims 1 and 3. The defendant relies on invalidity of the patent and noninfringement.

The question of infringement arises from the method of procedure followed by the defendant in randing heel blanks or heel bases in which procedure it employs a machine known as the Parks randing machine.

In the nomenclature of the art the word "lift" is applied to one layer of leather used in forming a heel, and may consist of a single piece or several pieces cut and shaped, laid in the same plane, forming the equivalent of a single thickness of leather. The term "rand," or "rand lift," is applied to the cup-shaped piece attached to the top of the heel, fitting it to the heel seat of the shoe. The term "heel blank," or "heel base," is applied to several heel lifts cemented together, forming the height of the heel minus the rand and a bottom or "finishing lift."

The term "heel log" is applied to a succession of heel lifts coated with an adhesive, piled one upon the other, to which pressure has been applied, making a log of some indeterminate length. A "heel log section" is a portion of a heel log of any convenient length.

The patent in suit is a process patent involving the operation of mechanical appliances represented in Bosworth's prior patent, No. 936,858, dated October 12, 1909, and No. 1,076,743, dated October 28, 1913, for building heel lifts, either whole or pieced, into so-called heel logs. In the prior patents the procedure described is that of progressively placing lifts which have been coated with adhesive in a pile and constantly forcing the pile downward through a guide, adapted to embrace the pile or column of lifts by pressure successively applied to each topmost lift after placement of the lift on top of the pile. In the method or mode of operation described in said patents, all of the lifts or layers are coated with adhesive, so as to make a continuous heel log without subdivisions, which log is afterwards subdivided by cutting into heel blanks.

The prior patents show guides sufficiently long to enable a slow-drying adhesive to set and become firm during the time required for any point in the log to travel from one end to the other of the guide at the rate of travel caused by the mode of operation described.

The purpose of the invention in suit is best described in the language of the patent as follows:

"The present invention has for its object to enable heel log sections of relatively short lengths to be produced by a continuous operation of the sort described in said patents, and to be further operated on in such manner as may be necessary to produce heels. One of

the effects secured is that the guides, even when a slow-drying adhesive is used to secure the lifts together, may be much shorter than those described in the prior patents, and the sections may be removed from time to time as they emerge from the guide, and subjected to pressure in a suitable container for as long a period as may be necessary to enable the adhesive to become thoroughly firm."

In order to produce the results sought, in the process of operation, the method employed in the original patents first above mentioned is varied from time to time by the insertion of nonadhesive parting layers, between the adhesively coated lifts. These are placed any desired distance apart from one another in the column, so as to divide the column into separable sections or log sections which may be removed and placed under pressure as above indicated. With that part of the process which involves the removal of log sections from the shute to be placed under pressure, we are not concerned. It is not the issue in the instant case. The only issue presented relates to the insertion from time to time of nonadhesive layers in the column of lifts for the purpose of separating a log into log sections.

It is claimed that the placing of nonadhesive pieces between lifts, so as to break the continuity of the log is a distinct advance in the art of heel building and patentable, so as to give the plaintiff a monopoly of the process.

In the language of the patent:

"One feature of the invention comprises the step of inserting parting layers at suitable intervals in the pile of lifts so as to divide the column which I have called a heel log."

"Another feature of the invention comprises the further step of subjecting the separate sections after they have emerged from the guide to a sufficiently firm pressure to hold them closely in contact while the adhesive continues to dry or set.

"The second feature named is dependent upon the first, and is therefore claimed in the application as part of a continuous process; but the first feature is not dependent upon the second and may be employed or practiced in conditions which do not require subsequent holding of the log section under pressure after it has been released from the guide."

The method employed by the defendant in randing heel blanks is claimed by the plaintiff to be the offending process, because the defendant uses a pressure plate beveled towards the center to shape a rand for the sole of a shoe and to attach it to a heel blank.

As already suggested, a heel blank is converted into a completed heel by having a rand applied to the upper side and a so-called top or finishing lift to the lower side. The finishing lift may be either leather or rubber.

The defendant has in its factory at Manchester, N. H., one of the plaintiff's machines for making log sections and also a Park's randing machine.

In the use of the latter machine, the method of which complaint is made in the plaintiff's bill is as follows:

A log section made on the plaintiff's machine is placed on the log sawing machine, supplied also by the Brockton Heel Company, and is sawed or sliced into heel blanks of any desired height or thickness. Then a heel blank is placed in the mold of the Park randing machine; one of these dividing plates is placed on the uppermost lift of the blank in the mold, with its beveled sides upwards, and a rand is then placed on top of the plate, the beveled side of the rand being downward to conform to the shape of the plate. A heel blank or base to which paste has been applied to the marginal portions of its under surface is then inserted on the rand. Another plate is then placed on the heel blank and the process repeated. Pressure is applied, and the several sections pass through a shute and drop out at its end completed heels, with the exception of the finishing lift.

Plaintiff complains that the beveled plate, sometimes coated with nonadhesive, used between individual heels, performs the same service when used in the Park's randing machine as the nonadhesive material inserted between lifts to divide a heel log into heel sections as used in the plaintiff's machine.

An examination of the file wrapper satisfies me that the idea of the patent in suit was at its inception, as described, "a method and means for producing heel logs," and was not intended as a means for making single heel blanks, neither was it intended as a means for attaching rands to heel blanks by any such method as that employed by the defendant. The first sentence of the original application for a patent is indicative of the purpose sought to be accomplished by Bosworth's invention. The language is as follows:

"The present invention relates to the art of building heel lifts, either whole or pieced, into blocks of much greater length or height than single heels, such blocks being known by the name of heel logs."

While it is true that the Bosworth patent as finally granted does not limit the patentee to heel logs, it is apparent from the language

of the patent that the primary purpose of the applicant was the production of heel logs.

The following language appears at line 49 on page 5 of the patent: "The heel log sections produced in the manner described in this specification and in my prior patents are subsequently cut up by a slicing or cross-cutting machine into heel blanks in cases where the sections are longer than the height of a single heel blank. It is not an essential feature of the present invention, however, that the section should be longer than the amount indicated, for it is a part of my contemplation to place parting layers with such frequency that each section of the log is a single heel blank, requiring no further subdivision to put it in condition for being made into a heel ready for application to a shoe. From the standpoint of economy, however, I consider it is preferable to make the sections of a length approximating three feet, and to form heel blanks by subsequently slicing the sections; but the invention is in no wise restricted to producing log sections of any particular length or height or to the step of subsequently dividing heel blanks."

The defendant claims what appears from the examination of the file wrapper to be a fact, that the above-quoted paragraph contains new matter not set forth, or even contemplated, in the language of the original application. Whether it is of such a character that it could not be inserted by amendment raises a question of law, which I do not find it necessary to determine, as I prefer to rest my decision of the case upon other grounds. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Huber v. Nelson Mfg. Co., 148 U. S. 270, 291, 13 S. Ct. 603, 37 L. Ed. 447.

It seems to me that Bosworth's process stops where the randing process begins, and that Bosworth's process, if patentable at all, cannot control the simple process of affixing rands to blanks, as the same is carried on in defendant's operation.

Bosworth's idea of having a detachable section at the end of the shute, so that a log section may be taken off and force supplied elsewhere may contain merit, but that part of the process is not involved in this litigation.

The file wrapper shows that an amendment was filed, which contemplated the breaking of the continuity of a heel log by omitting the adhesive between two lifts. This was rejected by the examiner as new matter.

It is also claimed that such a process is impracticable in operations, because it was found that, when force was applied to the pile, the adhesive material exuded from the sides of the heel lift and found its way between the lifts to which no adhesive had been applied. Because of its rejection, and because impracticable, such a process was omitted, and the claims were limited to the insertion of "parting layers repellant to adhesive" between the lifts.

In the process of building heel logs, as actually practiced, two sheets of paper coated with paraffine are used to form the parting layer. The only function the paraffine paper can possibly perform is that of separating two surfaces which otherwise might stick together. A study of the file wrapper shows that the parting layers were a subject of discussion and that the patent as granted was intended to limit such parting layers to the function of separating log sections. Had any other function been suggested it would have been rejected as new matter, as was the amendment covering the omission of adhesive between the contacting lifts.

While it is true that the plate used by the defendant in its process of randing heel blanks does perform the office of separating one randed blank from another, it also performs the important functions of forming, fitting, and centering the rand upon the heel blank. Certainly paraffine paper would not perform any of these latter functions.

The insertion of a nonadhesive substance between two surfaces to prevent them from sticking together is a simple process in everyday use. Standing alone, it lacks invention. It is familiar to every one who goes to a post office and buys for 25 cents a book of 2-cent stamps separated by parting layers of paraffine paper.

There is nothing in either of Bosworth's prior patents that suggests that a heel log must be of any predetermined length. No reason appears why parting layers might not be used by any one in the operation of either of the first patented devices. Such a use probably suggested the patent in suit.

Adverting again to the two patentable features as expressed on page 1, column 2, of the patent, the first refers to the insertion of parting layers; the second to a further step of subjecting log sections to independent pressure. It is said that the second feature is dependent on the first as a part of a continuous process, but that the first feature is not dependent upon the second.

The patentability of inserting parting layers independent of the remaining process is thus asserted, but it seems to me that, if patentable at all, each process is dependent upon the other.

While it may be conceded that, if a process patent involves a new and novel principle, the

patentee will not be limited to the exact apparatus shown and described, but will be entitled to broad enough interpretation of claims to secure to himself the real value of his contribution to the art, the rule cannot be applied in the instant case, because there is nothing new or novel in the idea of inserting paraffine paper or any other nonadhesive substance between two surfaces to prevent them from sticking together.

The act of inserting parting layers between lifts is a part of the process covered by the patent, and cannot be separated and treated independent of the second feature of the patent. As part of the process it can be infringed only by like process calculated to produce a heel log section to which pressure may be independently applied. I cannot give any such broad construction to the use of the parting layers as will make them applicable to anything outside of the use to which they are limited in the process of building heel log sections by the use of Bosworth's appliances. Defendant's process, both in practice and result to be attained, is quite different from that of the plaintiff's, and I hold that the defendant's method of randing heel blanks does not infringe plaintiff's process of building heel log sections.

A decree dismissing the bill will be entered upon presentation by counsel.